COMMONWEALTH of Pennsylvania, Appellee,

v.

Andrew BYRNE, Appellant.

Superior Court of Pennsylvania.

Submitted March 10, 2003.
Filed Sept. 23, 2003.

Andrew Byrne, appellant, pro se.

Nicholas J. Casenta, Asst. Dist. Atty., West Chester, for Com., appellee.

Before: STEVENS and BOWES, JJ. and McEWEN, P.J.E.

BOWES, J.

¶ 1 Andrew Byrne appeals *pro se* from the November 20, 2002 order denying him PCRA relief. We conclude that Appellant voluntarily waived his statutory right to credit for time served and affirm.

¶ 2 On March 29, 1992, following a two-week jury trial, Appellant was convicted of first degree murder for the July 10, 1991 strangulation death of his wife, Leona Car-

amanica, who also was known as Leah. On August 5, 1994, the court sentenced him to life imprisonment. We affirmed, on appeal, *Commonwealth v. Byrne*, 451 Pa.Super. 646, 679 A.2d 843 (1996) (unpublished memorandum), and rejected his challenge to the sufficiency of the evidence supporting his conviction.

¶ 3 Upon further review, the Supreme Court granted a new trial based on the admission of hearsay statements by Appellant's wife to a third person that Appellant had shoved and pushed her and had a violent temper. *Commonwealth v. Byrne*, 548 Pa. 24, 693 A.2d 201 (1997).

¶ 4 At his retrial, Appellant was convicted of first degree murder by a jury and again was sentenced to life imprisonment. On appeal, we granted Appellant a new trial because the Commonwealth committed a discovery violation. *Commonwealth v. Byrne*, 742 A.2d 200 (Pa.Super.1999) (unpublished memorandum). Specifically, at Appellant's retrial, the Commonwealth had impeached him by using statements that he had given during a deposition in a civil proceeding but had failed to disclose that it intended to use those statements prior to trial despite a specific defense request.

¶ 5 On February 8, 2001, facing a third trial and the distinct possibility of another first degree murder conviction and term of life imprisonment, Appellant elected to plead guilty to a charge of third degree murder. In exchange for the Commonwealth's agreement to allow Appellant to plead guilty to a lesser degree of murder despite two successful prosecutions for first degree murder, Appellant agreed to accept credit for time served of only one year.

¶ 6 The guilty plea colloquy was comprehensive. Appellant stated that he was not under the influence of narcotics or alcohol and that he was able to understand the

proceedings. Appellant acknowledged that he had been provided with various documents in advance of February 8, 2001, that he had reviewed the documents both by himself and with counsel, that he had sufficient time to review them, and that he executed them. In one of those documents, Appellant expressly, knowingly, and voluntarily agreed to waive all but one year of his statutory right to credit for time served. He executed each page of the following document and separately initialed each paragraph:

1. I understand that I was found guilty of first degree murder at two previous trials. [*initials*]

. . . .

14. Pursuant to this plea agreement I understand that I am only receiving credit for one year I have served in prison: February 8, 2000 to February 8, 2001. [*initials*]

15. Pursuant to this plea agreement, I understand that I am waiving my credit for all the other time I served in prison: August 8, 1991 to August 16, 1991; March 29, 1992 to June 5, 1997; and October 29, 1997 to February 7, 2001. [*initials*]

16. I am waiving my right to credit for time I served excluding the year knowingly, voluntarily, and intelligently. [*initials*]

17. No one has used any force or threats against me in order for me to waive my credit for time served. [*initials*]

18. No promises have been made to me in order to get me to enter this plea, other than what is set forth in the plea agreement, if any, on pages 3 and 4 of this guilty plea form. [*initials*]

19. I have had sufficient time to discuss the issue of credit for time served with my attorney. [*initials*]

20. My attorney has answered all of my questions concerning the issue of credit for time served. [*initials*]

21. I am waiving my right to receive credit for time served because I realize that it is in my best interest to accept the terms of the plea bargain rather than subject myself to a possible conviction on first degree murder and the penalty of a life sentence. [*initials*]

Addendum "B" To Guilty Plea Colloquy, 2/8/01, at 1–3. In a similar fashion, Appellant waived his double jeopardy rights, acknowledging that his attorney had explained those rights to him and that he voluntarily and knowingly waived them. *Id.* at ¶¶ 7, 11–13.

¶ 7 The plea agreement itself was written and executed by Appellant and his attorney. The agreement contained a negotiated sentence. Appellant agreed to plead guilty to murder of the third degree in exchange for ten to twenty years imprisonment, no probation, and with credit for time served from February 8, 2000, to February 8, 2001. He also agreed to have no contact with the witnesses who had testified against him and the Caramanica family. Thus, the record irrefutably establishes, in accordance with the Commonwealth's position, that "having [Appellant] waive credit for time served for periods of time was a fundamental and integral term and condition of the plea agreement." Commonwealth's brief at 17.

¶ 8 The guilty plea was entered with this express acknowledgement by Appellant: "[A]cting on advice from my attorney that the likelihood of a conviction is great, I'm entering a plea of guilt to the charge of murder in the third degree and I shall accept the sentence of imprisonment set forth in the guilty plea agreement." N.T., 2/8/01, at 6–7.

¶ 9 In addition to being reduced to writing, the terms of the plea agreement were

set forth at the time of the colloquy. The plea court was informed, "Basically the intent here of the parties is Mr. Byrne has served at this point eight years and three months in jail. Our intention is that he serve another nine years, for a total of 17 years and three months. On February 8th, 2010, he'd be up for parole." N.T., 2/8/01, at 10. The Commonwealth further agreed not to oppose parole and wrote a letter to the parole board indicating this agreement and belief that Appellant should be eligible for parole in seven years.

¶ 10 The plea court ascertained that Appellant understood that he could not obtain credit for time served prior to February 8, 2000:

THE COURT: Okay. On this point, Mr. Byrne, you understand that you are essentially giving up any time currently served; and that as I would understand it we are going to run the effective date of the sentence from February 8th, the year 2000.

Is that correct?

MR. DUFFY: One year ago today.

THE COURT: Okay. And that with regard to all of the time prior to February 8th of 2000, that you cannot in any manner claim credit for that against this sentence.

THE DEFENDANT: Yes.

N.T., 2/8/01, at 11–12.

¶ 11 The written factual basis for the guilty plea, which we now paraphrase, was extensive. It is partially grounded on the prior testimony of witnesses. Appellant claimed that on July 10, 1991, he returned to his apartment to find his wife dead, sitting slumped over the back of a chair. He told the first police officer to arrive at the scene that when he entered the apartment and found his wife's body, a bookshelf that he had moved earlier that day to vacuum was leaning against his wife's shoulder and that he thought the bookshelf had fallen on her. The expert witnesses in the case all agreed that Leah had been killed by strangulation and not by a falling bookshelf. The Commonwealth established that Appellant murdered his wife by strangulation and then staged an accident to explain her death, as follows.

¶ 12 Appellant and Leah lived at 257A Reston Drive, an apartment complex in Chester County. They had two children, Ari, who was two years old, and Travis, who was four months old. At 9:30 a.m. on July 10, 1991, Leah took Ari to a babysitter, Dorothy Ginty. Rose Pisano, a friend of the couple, telephoned the apartment at 12:05, spoke first with Appellant, and then spoke with Leah. The conversation ended at 12:40 p.m.

¶ 13 Maria Doughterty Litzenberger, a guest in the next door apartment, heard a baby cry in the apartment at 1:30 p.m. and heard no further noise, such as sounds of falling books or a bookshelf, between 1:30 p.m. and 3:00 p.m. At 3:01 p.m., Appellant banged on her apartment door. Todd Long and Kelly McAnany, who were occupants of that apartment, answered, and Appellant told them that something was wrong with his wife and to call an ambulance. There was a telephone in Appellant's apartment that he could have used to call an ambulance. Mr. Long told Ms. Litzenberger about Appellant's statement, and Ms. Litzenberger ran to Appellant's apartment, where she saw Leah on the ground, not in a chair, on top of books in the bedroom with Appellant at her waist screaming that they should do CPR, which they did. Ms. Litzenberger said that Leah was cold to the touch.

¶ 14 At 3:14, Sergeant Darren Stocker arrived at the scene of the crime. Appellant informed Sergeant Stocker that he had been vacuuming earlier that day and

moved furniture, including a bookshelf. Appellant said that he found his wife seated in a chair with a bookshelf leaning against her and that he thought that the bookshelf had fallen on her. Appellant also told Sergeant Stocker that he had an argument with the decedent between 1:25 and 1:30 p.m. after he told her that he was having lunch with his mother and that Leah struck him in the shoulder during the argument. Finally, Appellant stated that he had removed his wife's body from the chair after he went to the next-door-neighbor's apartment. Appellant indicated that nothing was stolen from the apartment.

¶ 15 Paramedics John Felicetti and Clare Sterback arrived at 3:16 p.m. At that time, they observed lividity along Leah's back and no lividity in her lower legs. Her extremities were cool, her jaw was stiff, her cornea was dry, and the whites of her eyes were red. These indications were used in determining the time of death.

¶ 16 Police Officer James DiCave arrived shortly after the paramedics and spoke with Appellant, who alternated between hysterical crying and normal conversation. Appellant admitted to Officer DiCave that he argued with his wife before he left to go to his mother's house for lunch. Appellant was interviewed by Chester County Detectives Charles Zagorskie and Larry Dampman later that afternoon. He repeated that he had vacuumed the apartment earlier that morning and had moved some furniture. He said that he left the apartment between 1:15 and 1:30 p.m. to go to his mother's house and when he returned, he discovered his wife seated, slumped over, in a chair. Appellant repeated that he removed his wife from the chair after he went to the next-door apartment. Chief Zagorskie noticed red scratches that appeared to be fresh on Appellant's arm. Appellant told him at

first that he did not know where he had received them and then said they may have been received during a fight he had two days earlier. Finally, he admitted that they may have resulted from the fight that he had with his wife earlier that day. Appellant explained that he had an argument with Leah about the fact that he was going to have lunch at his mother's house.

¶ 17 The autopsy was performed that evening. Dr. John Keith determined that the cause of death was strangulation. On July 11, 1991, police interviewed Appellant again. They gave Appellant *Miranda* warnings after he claimed that his wife was on the floor when he arrived at the apartment, contradicting the earlier statements he made, and then informed Appellant that the coroner had concluded that Leah died as a result of being strangled. At that time, Appellant denied that he argued with Leah, further contradicting his earlier statements to police. He then went back to his original story that when he arrived home after lunch with his mother, Leah was in a chair with the bookshelf leaning against her. However, he then said that he pulled her from the chair before going to the neighbor's apartment, which also was inconsistent with the statements of the previous day. After being informed by police that his wife had been strangled, Appellant continued to tell people, including Leah's relatives, that Leah died because a bookshelf accidentally fell on her.

¶ 18 The apartment was photographed and dusted for fingerprints between 4:15 and 4:45 p.m. on July 10, 1991. Additional fingerprints were lifted the following day. The only fingerprints found were either from police officers or Appellant.

¶ 19 The Commonwealth secured the testimony of two pathologists. One pathologist testified that the victim died prior to the time that Appellant, by his own admis-

sion, left the apartment. In other words, that pathologist stated that the victim died before 1:30 p.m. Both pathologists testified that the victim was strangled and that there was no evidence that she had been struck by a bookshelf. Further, there was no evidence of a sexual assault.

¶ 20 Kevin DiBiaso, an insurance agent, testified that in June 1991, he sold Appellant and his wife $100,000 in life insurance. Appellant asked Mr. DiBiaso if the policy would pay if someone came into the apartment and murdered him. Cecile Adkins, who lived in the apartment directly above Appellant and his wife, overheard three to five very loud arguments between Appellant and Leah during April and May, 1991.

¶ 21 The trial court accepted Appellant's guilty plea to third degree murder. Appellant was sentenced in accordance with the plea agreement to ten to twenty years imprisonment but was awarded credit for only one year of time served. Appellant did not appeal the judgment of sentence. He filed a timely petition for PCRA relief on February 4, 2002. His sole request for relief was credit for time served, in violation of the plea agreement.

¶ 22 Counsel was appointed and filed a no-merit letter and petition to withdraw. The PCRA court allowed counsel to withdraw and denied relief. This timely *pro se* appeal followed.

■ ¶ 23 Our standard of reviewing a PCRA court's denial of relief is limited to determining whether the court's decision is supported by the record and whether it is free from legal error. *Commonwealth v.*

*Merritt,* 827 A.2d 485 (Pa.Super.2003). On appeal, Appellant does not ask to withdraw his guilty plea. Instead, he requests credit for time served, attempting to avoid the terms of the guilty plea agreement. Appellant first notes that he was not given credit for time served in violation of 42 Pa.C.S. § 9760(2).[1] He maintains that he could not waive his statutory right to this credit. Second, he maintains that the sentence must be viewed as violative of his double jeopardy rights, which he also claims he cannot waive.

¶ 24 Appellant relies heavily upon *Commonwealth v. Kratzer,* 442 Pa.Super. 514, 660 A.2d 102 (1995), *Commonwealth v. Wood,* 432 Pa.Super. 183, 637 A.2d 1335 (1994), and *Commonwealth v. Williams,* 443 Pa.Super. 479, 662 A.2d 658 (1995). Those cases involve the nonavailability of a challenge to an illegal sentence in the context of the failure to raise the issue in the lower court or prior proceedings. None of those cases holds that a defendant cannot waive a statutory right pursuant to an express guilty plea agreement in a bargained-for exchange with the Commonwealth. Those cases do not involve a defendant's express **acquiescence** and **agreement** to the imposition to the illegal sentence nor are they analogous to the instant case, where the record establishes that Appellant knowingly, voluntarily, and intelligently waived his right to credit for time served under 42 Pa.C.S. § 9760(2) in exchange for the Commonwealth's agreement to forego a prosecution for first degree murder, a verdict that it had successfully obtained on two prior occasions.

---

1. 42 Pa.C.S. § 9760(2), credit for time served, provides:
   (2) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody under a prior sentence if he is later reprosecuted and resentenced for the same offense or for another offense based on the same act or acts. This shall include credit in accordance with paragraph (1) of this section for all time spent in custody as a result of both the original charge and any subsequent charge for the same offense or for another offense based on the same act or acts.

¶ 25 We recognize that other cases to which Appellant refers us indicate that the provisions of 42 Pa.C.S. § 9760(2) are mandatory and not discretionary. However, again, none of those cases involves the defendant's express agreement to waive the provisions of 42 Pa.C.S. § 9760(2) in exchange for concessions by the Commonwealth.

¶ 26 Appellant notes that in *Commonwealth v. Dorsey*, 280 Pa.Super. 388, 421 A.2d 777 (1980), we held that a defendant could not agree to pay three separate fines arising from one criminal incident in violation of a statutory provision allowing for payment of only one fine. However, in *Dorsey*, we struck the term that violated the statute because it was "undisputed ... that term did not induce the Commonwealth to enter the [guilty plea] agreement." *Id.* at 777. Herein, Appellant's agreement to waive the right to credit for time served was the key reason the Commonwealth agreed to allow him to plead guilty to third degree murder. The record irrefutably establishes that fact.

¶ 27 We have recognized the importance of the plea bargaining process as a significant part of the criminal justice system. *Commonwealth v. Anderson*, 434 Pa.Super. 309, 643 A.2d 109 (1994). Under this aspect of the system, a defendant is permitted to waive valuable rights in exchange for important concessions by the Commonwealth when the defendant is facing a slim possibility of acquittal. *Id.*

¶ 28 For example, we have upheld the validity of a defendant's express waiver of his constitutional right to appeal in exchange for the Commonwealth's agreement not to seek the death penalty. *Commonwealth v. Barnes*, 455 Pa.Super. 267, 687 A.2d 1163 (1996). Similarly, we have held that where the guilty plea agreement between the Commonwealth and a defendant contains a negotiated sentence, as is the case herein, and where that negotiated sentence is accepted and imposed by the court, a defendant is not allowed to challenge the discretionary aspects of the sentence. *Commonwealth v. Reichle*, 404 Pa.Super. 1, 589 A.2d 1140 (1991). We stated, "If either party to a negotiated plea agreement believed the other side could, at any time following entry of sentence, approach the judge and have the sentence unilaterally altered, neither the Commonwealth nor any defendant would be willing to enter into such an agreement." *Id.* at 1141 (quoting *Commonwealth v. Coles*, 365 Pa.Super. 562, 530 A.2d 453, 458 (1987)).

¶ 29 We find the reasoning of *Reichle* particularly pertinent in this case. Appellant entered a negotiated guilty plea and now seeks to avoid a specific term negotiated as part of that arrangement. If we allowed him now to avoid the term, it "would undermine the designs and goals of plea bargaining," and "'would make a sham of the negotiated plea process.'" *Reichle, supra* at 1141 (quoting in part *Coles, supra* at 456. *See also Commonwealth v. Porreca*, 528 Pa. 46, 595 A.2d 23 (1991)) (a defendant can knowingly and voluntarily waive his right to withdraw his guilty plea if the sentencing court fails to follow the Commonwealth's sentencing recommendation, as long as the defendant is informed that the Commonwealth's sentencing recommendation is not binding on the sentencing court and is informed that he cannot withdraw his guilty plea if the sentencing court fails to follow the Commonwealth's sentencing recommendation).

¶ 30 Indeed, a defendant routinely waives a plethora of constitutional rights by pleading guilty, including the right to a jury trial by his peers, the right to have the Commonwealth prove his guilt beyond a reasonable doubt, and his right to confront any witnesses against him. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23

L.Ed.2d 274 (1969) (knowing and voluntary guilty plea waives privilege against self-incrimination, right to jury trial, and right to confront one's accusers). Furthermore, a defendant is permitted to waive fundamental constitutional protections in situations involving far less protection of the defendant than that presented herein. *E.g., Peretz v. United States,* 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) ("The most basic rights of criminal defendants are ... subject to waiver."); *Johnson v. Zerbst,* 304 U.S. 458 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (sixth amendment right to counsel may be waived).

¶ 31 In the federal context, the United States Supreme Court has addressed a situation remarkably similar to that herein. Under the federal rules of evidence and criminal procedure, a defendant's statements made during the plea process may not be used against him in certain other proceedings. In *United States v. Mezzanatto,* 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995), the Court reversed a court of appeals decision that held that a defendant could not expressly waive that right because the rules did not permit such waiver. The United States Supreme Court held that a defendant is permitted to waive expressly any right if that waiver is obtained pursuant to a knowing and voluntary agreement.

¶ 32 We are aware of no authority that provides an impediment to a defendant's express, knowing, and voluntary waiver of a statutory right if that waiver is key in obtaining a bargained-for exchange from the Commonwealth. Indeed, contrary to the position of the dissent, the case law supports the conclusion that a statutory right can be waived. *Commonwealth v. Mallon,* 279 Pa.Super. 350, 421 A.2d 234, 238–39 (1980). In *Mallon,* we stated:

[A]lthough the Supreme Court has held that generally a "knowing and intelli-gent" waiver is required when constitutional rights are involved, *Brewer v. Williams,* 430 U.S. 387 [97 S.Ct. 1232, 51 L.Ed.2d 424] (1977); *Schneckloth v. Bustamonte,* 412 U.S. 218 [93 S.Ct. 2041, 36 L.Ed.2d 854] (1973); *D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174 [92 S.Ct. 775, 31 L.Ed.2d 124] (1972); *Brady v. United States,* 397 U.S. 742 [90 S.Ct. 1463, 25 L.Ed.2d 747] (1970); *Brookhart v. Janis,* 384 U.S. 1 [86 S.Ct. 1245, 16 L.Ed.2d 314] (1966); *Johnson v. Zerbst,* 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] (1938), the Court has never required this same high standard to be applied where rights deriving from a statute are at issue. Accordingly, the United States Court of Appeals for the Third Circuit has said: "When a claim of a fundamental right under the Constitution is at stake, the Supreme Court has determined that a strict waiver standard must be applied. Due process, however, does not compel the same strict standard when state-conferred rights are at stake." *United States ex rel. Payton v. Rundle,* 472 F.2d 36, 40 (3d Cir.1972).

*Id.* at 238–39 (footnote omitted); *see also Commonwealth v. Bonczak,* 342 Pa.Super. 167, 492 A.2d 445 (1985) (defendant can waive statutory right to joinder of offenses under 18 Pa.C.S. § 110).

¶ 33 In light of the Commonwealth's two prior, successful prosecutions, Appellant, as he acknowledged, faced a slim possibility of acquittal. The colloquy establishes that the waiver of his statutory right to credit for time-served was knowing, voluntary, and intelligent. We therefore reject Appellant's request for that credit. Furthermore, since Appellant knowingly and voluntarily waived his double jeopardy rights, we also reject his challenge to the legality of his sentence based on a double jeopardy analysis.

¶ 34 Since Appellant did not agree to waive any rights with respect to the statutory maximum sentence, we must address Appellant's suggestion that he was sentenced to more than the legal maximum for third degree murder. Third degree murder is a first degree felony, which has a maximum sentence of twenty years. 18 Pa.C.S. § 2502(c), 18 Pa.C.S. 1103(1). A minimum sentence may not exceed one-half of the maximum sentence. 42 Pa.C.S. § 9756(b). Appellant's sentence of ten to twenty years imprisonment for third degree murder, therefore, did not violate the statutory provisions cited by Appellant. He merely did not receive credit for time served because he voluntarily and knowingly waived that right.

¶ 35 We also must stress that in this case, Appellant is not seeking to withdraw his guilty plea. On page fourteen of his brief, Appellant specifically indicates that he is **not** challenging the validity of his guilty plea and is requesting only credit for time served in violation of that agreement.

¶ 36 Nevertheless, even if we interpreted his requested relief as an attempt to withdraw his guilty plea, his argument would still be unavailing. "When considering a petition to withdraw a plea submitted to a trial court after sentencing, it is well-established that a showing of prejudice on the order of **manifest injustice** is required before withdrawal is properly justified." *Commonwealth v. Johns,* 812 A.2d 1260, 1261 (Pa.Super.2002) (emphasis added). We examined this standard in *Commonwealth v. Muhammad,* 794 A.2d 378, 383 (Pa.Super.2002):

> The standard for withdrawal of a guilty plea after imposition of sentence is much higher [than the standard applicable to a presentence motion to withdraw]; a "showing of prejudice on the order of manifest injustice is required before withdrawal is properly justified."

*Commonwealth v. Carpenter,* 555 Pa. 434, 454, 725 A.2d 154, 164 (1999) (quoting *Commonwealth v. Shaffer,* 498 Pa. 342, 346, 446 A.2d 591, 593 (1982)). "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." *Commonwealth v. Stork,* 737 A.2d 789, 790 (Pa.Super.1999).

A showing of manifest injustice is required after imposition of sentence since, at this stage of the proceeding, permitting the liberal standard enunciated in [the presentence setting] might encourage the entrance of a plea as a "sentence testing device." *Commonwealth v. Muntz,* [428 Pa.Super. 99] 630 A.2d 51, 53 (Pa.Super.1993) (citing *Commonwealth v. Starr,* 450 Pa. 485, 489, 301 A.2d 592, 594 (1973)). We note that disappointment by a defendant in the sentence actually imposed does not represent manifest injustice. *See Commonwealth v. Munson,* [419 Pa.Super. 238] 615 A.2d 343 (Pa.Super.1992).

¶ 37 There can be no manifest injustice or an unknowing and involuntary guilty plea in this case since the written plea agreement irrefutably establishes that Appellant, after being fully informed of his right to credit for time served, voluntarily and knowingly waived that right. We conclude that Appellant's guilty plea is not invalid due to his waiver of his statutory right to credit for time served. Appellant cannot withdraw his guilty plea based solely on dissatisfaction with a sentencing arrangement that he voluntarily and knowingly entered. Simply, Appellant chose not to receive credit for time served in exchange for not having to serve the remainder of his life in prison. Accordingly, it is clear the PCRA relief properly was denied.

¶ 38 Order affirmed.

¶ 39 P.J.E. McEWEN files a Dissenting Statement.

McEWEN, P.J.E., Dissenting.

¶ 1 While the Opinion of the majority reveals a careful analysis and a persuasive expression of rationale, I am compelled to a differing position.

¶ 2 The extensive history of this case began with the arrest of appellant in 1991 for the strangulation murder of his wife. Appellant was tried and convicted by a jury of first degree murder on March 29, 1992. The trial court imposed a sentence of life imprisonment, and this Court affirmed that sentence on direct appeal. *Commonwealth v. Byrne*, 451 Pa.Super. 646, 679 A.2d 843 (1996) (unpublished memorandum). Appellant appealed to the Supreme Court of Pennsylvania, which reversed the order affirming the judgment of sentence. *Commonwealth v. Byrne*, 548 Pa. 24, 693 A.2d 201 (1997). Appellant was retried, and again convicted by a jury of first degree murder on October 29, 1997. The trial court imposed a sentence of life imprisonment, and appellant again appealed to this Court. A panel of this Court vacated the judgment of sentence, and remanded the case for a third trial. *Commonwealth v. Byrne*, 742 A.2d 200 (Pa.Super.1999) (unpublished memorandum). Our Supreme Court denied the Commonwealth leave to appeal. *Commonwealth v. Byrne*, 564 Pa. 702, 764 A.2d 1064 (2000).[2]

¶ 3 Thereafter, on February 8, 2001, appellant entered into a plea agreement with the Commonwealth, under the terms of which (1) the Commonwealth would accept a plea of guilty to third degree murder and agree to refrain from opposition to an application for parole when appellant becomes eligible for parole, and (2) appellant would be sentenced to serve a term of imprisonment of from ten to twenty years, but would receive credit for but one year of imprisonment served, and waive credit for the balance of the approximately nine years of imprisonment actually served. The trial judge accepted this plea agreement on that same date and sentenced appellant accordingly.

¶ 4 Appellant did not file a direct appeal from the judgment of sentence. Almost a full year later, however, appellant filed a PCRA petition on February 4, 2002, in which he sought credit, despite his agreement, for the full amount of the imprisonment he had served prior to the imposition of sentence. The Assistant Public Defender appointed to represent appellant in the PCRA proceedings filed a motion to withdraw and a "no merit" letter. The trial court gave notice of its intent to dismiss the PCRA petition as meritless on October 21, 2002, and allowed appointed counsel to withdraw. When the trial court dismissed appellant's PCRA petition on November 20, 2002, appellant filed the instant appeal.

¶ 5 Appellant now challenges the legality of his sentence because he was not given credit for the full amount of the years of imprisonment that he has already served. Appellant contends that because, under the plea agreement, he was sentenced to an additional period of incarceration of from ten years to twenty years, he is effectively serving a sentence that exceeds the statutory penalty that was in effect at the time the crime was committed, and that his acquiescence to the sentence cannot serve to cure its inherent illegality. The Commonwealth, in response, argues that appellant made a knowing, voluntary and intelligent waiver of credit for any time served beyond the one year to which he had agreed. The majority now accepts the argument of the Commonwealth.

---

**2.** Since both of appellant's convictions were reversed, I differ with the view of the majority that the prior prosecutions were "successful."

*See:* [Majority Opinion, p. 736] *Commonwealth v. Byrne*, 833 A.2d 729, 736, 2003 WL 22176994 (Pa.Super.2003).

¶ 6 The ultimate conclusion of the majority, that a defendant can agree to waive credit for time served on a sentence of imprisonment, flows from the premise that the Sentencing Code grants "statutory rights" to a defendant, which the defendant can, in an exercise of discretion, either waive or assert. I am of a different mind, since I do not believe that the Sentencing Code is a grant of rights to a defendant, but is, instead, a legislative restriction upon the power of the Courts to imprison citizens, and delineates what the courts "shall" and "shall not" do. It strikes me that the "General Standards" section of the Sentencing Code so pronounces when it declares:

In selecting from the alternatives set forth in subsection (a) *the court shall* follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. *The court shall* also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing and taking effect pursuant to section 2155 (relating to publication of guidelines for sentencing). In every case in which the court imposes a sentence for a felony or misdemeanor, *the court shall* make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 2154 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 2155, *the court shall* provide a contemporaneous written statement of the reason or rea-

sons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

42 Pa.C.S. § 9721(b) (emphasis supplied).

¶ 7 The Code is similarly unambiguous on the issue of credit for time served, for its provisions are directed *to the sentencing court,* and state:

### § 9760. Credit for time served

After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court *shall* give credit as follows:

(1) Credit against the maximum term and any minimum term *shall* be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit *shall* include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

(2) Credit against the maximum term and any minimum term *shall* be given to the defendant for all time spent in custody under a prior sentence if he is later reprosecuted and resentenced for the same offense or for another offense based on the same act or acts. This *shall* include credit in accordance with paragraph (1) of this section for all time spent in custody as a result of both the original charge and any subsequent charge for the same offense or for another offense based on the same acts or acts.

42 Pa.C.S. § 9760(1),(2) (emphasis supplied).

¶ 8 As a result, I conclude that the trial court did not have the authority to ignore this clear and certain legislative mandate

and was obliged to reject the facially flawed plea agreement. Thus, as I see it, the plea agreement was void, and neither appellant nor the Commonwealth should be presently bound by its terms. Consequently, I would vacate the judgment of sentence and remand the case for trial or such other further proceedings as appropriate.