J-S33040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DWAYNE ROBERT MUSSOMELE | |
| Appellant | No. 1737 WDA 2015 |

Appeal from the Judgment of Sentence August 31, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010592-2015

BEFORE: GANTMAN, P.J., OLSON, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 14, 2016**

Appellant, Dwayne Robert Mussomele, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his negotiated guilty plea to receiving stolen property.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Beginning in or around March 2015, Appellant performed construction work on Mr. and Mrs. McAdoo's home.  In June 2015, Mrs. McAdoo noticed she was missing jewelry from her home.  The McAdoos reported the missing jewelry to Nathan Ebaugh, who was in charge of the construction crew.  Mr. Ebaugh spoke to his crew about the missing jewelry, and Appellant initially

_____

[1] 18 Pa.C.S.A. § 3925.

_____

*Former Justice specially assigned to the Superior Court.

denied having any knowledge about the missing items. Following Appellant's conversation with Mr. Ebaugh, Appellant stopped reporting for work. Several weeks after their conversation, Appellant admitted to Mr. Ebaugh that Appellant was in possession of a wedding ring Mrs. McAdoo had reported missing. Appellant also admitted he had sold some of the missing jewelry to a pawnshop. Mr. Ebaugh called local pawnshops and was able to track down some of the jewelry. The pawnshop confirmed Appellant had sold some of the items reported missing, and that the pawnshop had already re-sold some items. As to the jewelry the pawnshop still had in its possession, Mr. Ebaugh purchased that jewelry to return to the McAdoos. The McAdoos filed a police report on July 18, 2015, accusing Appellant of stealing jewelry and other items missing from their home.

On July 19, 2015, Mr. Ebaugh arranged to meet Appellant to retrieve the missing items Appellant had in his possession. Appellant gave Mr. Ebaugh a green cloth bag containing a white gold wedding band, a yellow gold chain, and a gold plated bracelet. Police officers were dispatched to assist Mr. Ebaugh, and they subsequently detained Appellant and brought him to the police station for questioning. Appellant informed police that while he was working on the McAdoos' home, Appellant was outside walking around and saw a green bag with a yellow string hanging from under a branch at a property near the McAdoos' home. Appellant said he was unsure to whom the bag belonged, so he kept it. Appellant conceded he "made a

bad choice" by not turning in the bag to police. Appellant admitted he pawned some of the jewelry he found in the bag. Following the interview, police spoke with Mrs. McAdoo, who confirmed where her jewelry and other missing items had been stored inside the home before they went "missing."

The Commonwealth subsequently charged Appellant with receiving stolen property. On August 31, 2015, Appellant entered a negotiated guilty plea to that crime in exchange for twenty-four months' probation and $4,355.00 in restitution. Appellant signed a plea offer sheet expressly stating the amount of restitution and the length of the negotiated sentence. Appellant also completed a written plea colloquy confirming his decision to plead guilty was knowing, intelligent, and voluntary. At the beginning of the guilty plea hearing, the clerk read on-the-record the terms of the negotiated guilty plea, including the amount of restitution and the length of the negotiated sentence. The parties stipulated to the facts as set forth in the criminal complaint and affidavit of probable cause. After conducting a full guilty plea colloquy, the court accepted Appellant's plea as knowing, intelligent, and voluntary, and imposed the negotiated sentence of twenty-four months' probation and $4,355.00 in restitution.

On September 24, 2015, Appellant filed a petition for allowance to file a motion to withdraw his guilty plea *nunc pro tunc*. The court granted Appellant's requested relief the next day. Appellant timely filed a post-sentence motion to withdraw his guilty plea *nunc pro tunc* on September 30,

2015, claiming his guilty plea was invalid because Appellant was uninformed about the length of his sentence and the amount of restitution when he entered his plea. The court denied Appellant's motion that day. Appellant timely filed a notice of appeal on October 30, 2015. On November 30, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal, and Appellant complied.

Appellant raises one issue for our review:

> WAS [APPELLANT'S] GUILTY PLEA NEITHER KNOWINGLY NOR INTELLIGENTLY MADE; THUS A MANIFEST INJUSTICE OCCURRED AND THE TRIAL COURT ERRED IN NOT ALLOWING [APPELLANT] TO WITHDRAW HIS PLEA?

(Appellant's Brief at 4).

Appellant argues he did not understand the terms of his negotiated plea agreement before he pled guilty. Appellant asserts he was unaware the court would sentence him to twenty-four months' probation and impose restitution in the amount of $4,355.00. Appellant claims the plea offer sheet he signed was confusing because it indicated the value of the jewelry at issue as $1,220.00. Appellant contends the criminal complaint does not suggest the value of the jewelry is $4,355.00. Appellant insists the plea offer sheet was also unclear because in the space marked "months probation" the number "12" is written, crossed out with the number "24" written next to it. Appellant maintains the totality of the circumstances demonstrates his plea was unknowing, unintelligent, and involuntary. Appellant concludes he established prejudice demonstrating a manifest

- 4 -

injustice, and this Court must reverse the order denying Appellant's post-sentence motion to withdraw his guilty plea. We disagree.

"[A] defendant has no absolute right to withdraw a guilty plea; rather, the decision to grant such a motion lies within the sound discretion of the trial court." *Commonwealth v. Muhammad*, 794 A.2d 378, 382 (Pa.Super. 2002). Withdrawal of a guilty plea after sentencing requires "a showing of prejudice on the order of manifest injustice…. A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." *Id.* at 383 (internal citations and quotation marks omitted). A defendant's disappointment with the sentence imposed does not represent a manifest injustice. *Id.* Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing and bears the burden of proving otherwise. *Commonwealth v. Pollard*, 832 A.2d 517 (Pa.Super. 2003). A defendant who decides to plead guilty is bound by the statements he makes while under oath, "and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." *Id.* at 523.

"This Court evaluates the adequacy of the guilty plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea." *Muhammad, supra* at 383-84. A guilty plea will be deemed valid if an examination of the totality of the circumstances surrounding the plea shows that the defendant had a

full understanding of the nature and consequences of his plea such that he knowingly and intelligently entered the plea of his own accord. ***Commonwealth v. Rush***, 909 A.2d 805 (Pa.Super. 2006).

Additionally, with respect to negotiated plea agreements:

> [W]here the guilty plea agreement between the Commonwealth and a defendant contains a negotiated sentence, …and where that negotiated sentence is accepted and imposed by the court, a defendant is not allowed to challenge the discretionary aspects of the sentence. ***Commonwealth v. Reichle***, [589 A.2d 1140 (Pa.Super. 1991)]. We stated, "If either party to a negotiated plea agreement believed the other side could, at any time following entry of sentence, approach the judge and have the sentence unilaterally altered, neither the Commonwealth nor any defendant would be willing to enter into such an agreement." ***Id.*** at 1141.

> We find the reasoning of ***Reichle*** particularly pertinent in this case. Appellant entered a negotiated guilty plea and now seeks to avoid a specific term negotiated as part of that arrangement. If we allowed him now to avoid the term, it "would undermine the designs and goals of plea bargaining," and "would make a sham of the negotiated plea process." [***Id.***]

***Commonwealth v. Byrne***, 833 A.2d 729, 735 (Pa.Super. 2003) (some internal citations and quotation marks omitted).

Instantly, the trial court addressed Appellant's request to withdraw his guilty plea as follows:

> [Appellant] completed a written plea colloquy and engaged in an on-the-record colloquy with this [c]ourt. …

> [Appellant] claims his plea was unknowing and involuntary because he was not informed of the details of the sentence before signing his plea. This claim is belied by the written plea offer that [Appellant] and his counsel signed, as well

- 6 -

as the transcript of the plea and sentencing hearing. [Appellant] was sentenced pursuant to his negotiated plea agreement and, after sentence was imposed, he stated that he understood his sentence and had no questions. At no time did [Appellant] object, question or inform the court that his guilty plea was anything other than knowingly and voluntarily entered. …

(Trial Court Opinion, filed December 2, 2015, at 2-3). We see no reason to disrupt the court's analysis. *See Muhammad, supra*.

The record makes clear Appellant understood he was pleading guilty to receiving stolen property and facing twenty-four months' probation and $4,355.00 in restitution, pursuant to the parties' negotiated plea agreement. The plea offer sheet expressly states the amount of restitution as $4,355.00 with multiple circles drawn around that number. The plea offer sheet contains a notation stating "Jewelry $1,222.00," written near the top of the page, but the record suggests that dollar amount correlates with the value of the jewelry actually recovered from Appellant on the day of his arrest, and not the total value of all jewelry stolen. Appellant ignores that the McAdoos reported other items stolen from their home as well. Regarding the length of sentence, the number "12" is crossed out with a slash through it; the number "24" is written next to it and circled in the space marked "months probation." Appellant and his counsel both signed the plea offer sheet.

Additionally, at the beginning of Appellant's guilty plea hearing, the court clerk stated the terms of the negotiated sentence, indicating the length of the agreed-upon sentence and the amount of restitution. Appellant told

- 7 -

the court he understood the terms of his plea agreement and did not object following the court's acceptance of his guilty plea or the imposition of sentence. When the court asked Appellant if he had any questions regarding his sentence, Appellant said no. The record shows Appellant had a full understanding of the nature and consequences of his plea. *See Rush, supra*. Further, allowing Appellant to renege on his end of the bargain at this juncture would run afoul of the concept of negotiating plea agreements. *See Byrne, supra*; *Reichle, supra*. Therefore, the court properly denied Appellant's post-sentence motion to withdraw his guilty plea. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/2016