J-S24011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON EDWARDS | : | |
| | : | |
| Appellant | : | No. 2496 EDA 2021 |

Appeal from the PCRA Order Entered November 5, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008635-2017

BEFORE:   PANELLA, P.J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED OCTOBER 12, 2022**

Aaron Edwards appeals from the order dismissing his timely first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 42 Pa.C.S.A. 9541-9546. Upon careful review, we affirm

From 2016 to 2017, Edwards and Christopher Hines were both romantically involved with the same woman. In the early afternoon of July 19, 2017, Hines was sitting in his vehicle, which was parked on the street outside of his home. Edwards approached the vehicle, and the two men had a verbal exchange. The men offered slightly differing accounts as to what transpired

---

[*] Retired Senior Judge assigned to the Superior Court.

after the verbal exchange ended.[1] However, there is no question that Edwards pulled a gun and fired a shot through the driver's side door. The bullet hit Hines in the abdomen.[2] When Hines reversed his vehicle, Edwards fired a second shot that hit the windshield. Edwards was arrested on July 21, 2017.

On October 13, 2017, the Commonwealth filed an information charging Edwards with attempted murder, aggravated assault, possessing an instrument of crime ("PIC"), simple assault, and recklessly endangering another person ("REAP"). Edwards entered a guilty plea on October 7, 2019, and then filed a motion to withdraw. The trial court granted the motion to withdraw the guilty plea on October 30, 2019.

At the conclusion of a nonjury trial, Edwards was convicted of aggravated assault, simple assault, PIC and REAP. He was found not guilty of attempted murder. On July 28, 2020, the trial court sentenced Edwards to serve an aggregate term of incarceration of eleven and one-half to twenty-three months, followed by four years of probation. Edwards did not file a direct appeal.

---

[1] Edwards contended that as he was walking away, he saw Hines pull a gun, and then decided to take out his firearm, and he "put a shot into the door." N.T., 1/10/20, at 206.

[2] The injury suffered by Hines required emergency surgery and a nearly one-month hospital stay.

On January 28, 2021, Edwards filed the instant, counseled PCRA petition. The PCRA court dismissed the petition on July 5, 2021. This timely appeal followed.

Our standard of review for an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. *See Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *See id*.

In his first issue on appeal, Edwards claims his trial counsel was ineffective.

Concerning ineffective assistance of counsel arguments, we presume counsel is effective, and the appellant bears the burden to prove otherwise. *See Commonwealth v. Bennett*, 57 A.3d 1185, 1195 (Pa. 2012). The appellant must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Solano*, 129 A.3d 1156, 1162-63 (Pa. 2015).

Pursuant to the first prong, we note that where an appellant is not entitled to relief on the underlying claim upon which his ineffectiveness claim is premised, he is not entitled to relief on his ineffectiveness claim. *See*

*Commonwealth v. Ousley*, 21 A.3d 1238, 1246 (Pa. Super. 2011). In short, counsel cannot be deemed ineffective for failing to pursue a meritless claim. *See Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Regarding the second prong, we have long reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting *Commonwealth v. Miller*, 431 A.2d 233 (Pa. 1981)). In addition, we are mindful that prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *See Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

Edwards contends that the judge who accepted his guilty plea, which was later withdrawn, should not have presided over his nonjury trial. He asserts that the trial judge was tainted by the prior guilty plea. He therefore asserts that his trial counsel was ineffective when he failed to file a motion to recuse. *See* Appellant's Brief at 9-19.

The party requesting recusal must "produce evidence establishing bias, prejudice or unfairness [that] raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Tedford*, 960 A.2d 1, 55–56 (Pa. 2008) (citation omitted). *See also Commonwealth v. Postie*, 110

A.3d 1034, 1038 (Pa. Super. 2015) (citation omitted) (holding the trial court did not abuse its discretion in denying recusal motion where the court had sat as suppression court because the defendant made no argument that his admissions at the suppression hearing were inadmissible or that trial proceedings were flawed and, it observed that a trial judge is capable of disregarding prejudicial evidence).

Our Supreme Court has long clarified that the rule regarding the same judge hearing pretrial proceedings and presiding over the subsequent trial is that "a judge should honor a request for recusation where prejudicial information is received in a pre-trial proceeding that would be otherwise inadmissible during the trial of the cause." *Commonwealth v. Goodman*, 311 A.2d 652, 654 (Pa. 1973). "Whether a trial judge should recuse himself thus depends upon the type of evidence that the judge hears; if the evidence is inadmissible and is of a highly prejudicial nature, the judge should recuse himself or declare a mistrial if it is too late for recusal." *Commonwealth v. Lewis*, 460 A.2d 1149, 1151 (Pa. Super. 1983) (citation omitted).

The following language from our decision in *Commonwealth v. Postie*, 110 A.3d 1034 (Pa. Super. 2015), is instructive:

> [T]he mere participation by the trial judge in an earlier stage of the proceedings does not provide a *per se* basis for requiring recusal of the trial judge.
>
>> The determination of whether a trial judge should recuse himself depends upon the following: the type of evidence that the judge hears; **if the evidence is inadmissible and is of a highly prejudicial**

**nature**, the judge should recuse himself or declare a mistrial if it is too late for recusal. The judge should also recuse himself whenever there is substantial doubt as to his ability to preside impartially. The burden to show prejudice, however, is on the party seeking recusal. **If the evidence is admissible**, or not of a highly prejudicial nature, **recusal is not required**, and **while it may be the better practice to have a different judge preside over trial than preside over pre-trial proceedings, such a practice is not constitutionally required** and has not been made the basis for setting aside a verdict reached in an otherwise proper trial. This principle appears to be based on the prevailing view that judicial fact-finders are capable of disregarding prejudicial evidence.

*Postie*, 110 A.3d at 1038 (quoting *Commonwealth v. Lott*, 581 A.2d 612, 615 (Pa. Super. 1990)) (emphases added).

The PCRA court addressed Edwards's claim of ineffective assistance and determined he failed to satisfy any prong of the ineffectiveness test, which includes a failure to establish merit to the underlying issue. *See* PCRA Court Opinion, 1/24/22, at 4-7. As the court noted, the "issue [at trial] was not whether [Edwards] actually shot at the complaining witness, but whether the shooting was done in self-defense." *Id*. at 5. Further, the court observed that at his nonjury trial "[Edwards] acknowledged that he shot the complaining witness but claimed it was in self-defense." *Id*. at 6 (citing N.T., 1/10/20, at 236). The PCRA court opined that "[n]othing about the guilty plea or any other pretrial proceedings would have left the trial court incapable of rendering an impartial verdict on this simple issue." *Id*. Moreover, the PCRA court

- 6 -

recognized that "[n]o inadmissible evidence was heard by the trial court." ***Id***.

We agree with the PCRA court's conclusions.

Our review of the record reflects that the trial court, after conducting an extensive colloquy, accepted Edwards's guilty plea. ***See*** N.T., 10/7/19, at 4-18, 19. Prior to accepting the plea, the Commonwealth set forth the following facts that it would have introduced at trial:

> [O]n July 19, 2017, in the 500 block of Widener Street, …, the complainant, Christopher Hines, …, was on the phone in his vehicle with his girlfriend, ….
>
> At that time, [Edwards] approached Mr. Hines' vehicle, and with his gun, shot into the vehicle on the driver's side door, striking the complainant, Mr. Hines, in his left side of the abdomen. The victim then reversed his vehicle, and [Edwards] shot one more bullet into the car, which struck the windshield of the car.
>
> Mr. Hines then drove himself to Albert Einstein Hospital, where he underwent surgery and was in the hospital, approximately, for a month.

N.T., 10/7/19, at 17-18.

The record further establishes that the court held a hearing on Edwards's motion to withdraw his guilty plea. At the hearing, defense counsel stated, "[A]t this time, the defense would motion the [c]ourt to allow [Edwards] to withdraw his guilty plea upon the basis that he maintains his innocence, and has a self-defense claim that he wishes to put before this [c]ourt." N.T., 10/30/19, at 7. The court immediately granted the request to withdraw and set a trial date. ***See id***.

Thereafter, the following transpired between the trial court and defense counsel:

> THE COURT: … I heard the guilty plea in this matter. Certainly, your client has the right to ask me to recuse myself since I did hear the guilty plea in this matter.
>
> Have you had a chance to speak to your client about whether he wants a recusal?
>
> [DEFENSE COUNSEL]: Yes, I have, Your Honor. He does not wish to have a recusal. He does realize that he had put certain facts before this [c]ourt. He does not dispute that he fired the gun. He does not dispute that when he fired the gun, he hit the complaining witness in this case. So under those facts, he's perfectly fine.
>
> THE COURT: It's just a matter of whether there's an affirmative defense or not.
>
> [DEFENSE COUNSE]: Exactly.

N.T., 10/30/19, at 8.

At his subsequent nonjury trial, Edwards testified on his own behalf. *See N.T.*, 1/10/20, at 175-225. On direct examination, Edwards admitted to the fact that he fired a shot into the car door and then fired a second shot as the victim was driving the car. *See id*. at 206-207. On cross-examination, Edwards admitted to firing the first shot into the driver's side door and that the shot hit the victim's stomach. *See id*. at 220. Edwards further acknowledged that the second shot he fired hit the windshield. *See id*. at 220-221.

It cannot be disputed that the facts presented by the Commonwealth at the guilty plea hearing were the exact facts subsequently offered by Edwards

at his trial. We reiterate that recusal is not warranted if the pretrial evidence is admissible at trial. *Postie*, 110 A.3d at 1038. Moreover, as set forth above, this Court has expressly stated that having a different judge try a case than the one who heard pretrial proceedings "is not constitutionally required." *Id*. Accordingly, we discern no error on the part of counsel for advising Edwards to proceed to a nonjury trial before the same judge who accepted his later withdrawn guilty plea. Hence, the record supports the PCRA court's finding that Edwards failed to prove that trial counsel should have sought recusal of the trial judge. Edwards's claim of ineffective assistance fails.

In his second issue, Edwards presents a challenge to the legality of his sentence. *See* Appellant's Brief at 19-22. Specifically, he argues that his sentence is illegal because he did not receive credit for the time he served prior to his sentencing.[3] Edwards asserts that the trial court lacked authority to refuse awarding credit for his time spent in pretrial custody. *See id*. at 21.

This Court has explained that "[a] challenge to the trial court's failure to award credit for time spent in custody prior to sentencing involves the legality of sentence and is cognizable under the PCRA." *Commonwealth v. Fowler*, 930 A.2d 586, 595 (Pa. Super. 2007) (citation omitted). Moreover, "[a] claim

---

[3] As noted by the Commonwealth, Edwards conflates the challenge to the legality of his sentence with an issue challenging the effective assistance of trial counsel for failing to object to the trial court failing to grant credit for time served. *See* Commonwealth's Brief at 10 n.3. Because claims challenging the legality of sentence are cognizable under the PCRA, we need not address any allegation of ineffective assistance of trial counsel.

challenging the legality of a sentence is appealable as of right."

***Commonwealth v. Little***, 612 A.2d 1053, 1053 n.1 (Pa. Super. 1992)

(citation omitted). Issues relating to the legality of a sentence are reviewed

*de novo,* and our scope of review is plenary. ***See Commonwealth v.***

***Infante***, 63 A.3d 358, 363 (Pa. Super. 2013).

Regarding the awarding of credit for time served, the Sentencing Code

provides, in relevant part, as follows:

**§ 9760.  Credit for time served**

After reviewing the information submitted under section
9737 (relating to report of outstanding charges and sentences)
the court shall give credit as follows:

(1) Credit against the maximum term and any
minimum term shall be given to the defendant for all
time spent in custody as a result of the criminal charge
for which a prison sentence is imposed or as a result
of the conduct on which such a charge is based. Credit
shall include credit for time spent in custody prior to
trial, during trial, pending sentence, and pending the
resolution of an appeal.

42 Pa.C.S.A. § 9760(1).

"Section 9760(1) contains two general elements: (1) the time must be

'spent in custody' and (2) the time must be 'as a result of the criminal charge

for which a prison sentence is imposed or as a result of the conduct on which

such a charge is based.'" ***Commonwealth v. Nobles***, 198 A.3d 1101, 1106

(Pa. Super. 2018) (citing 42 Pa.C.S.A. § 9760(1)). "If both conditions are met,

then the defendant is entitled to credit as of right." ***Id***. (citation omitted).

However, "a defendant may waive his statutory right to sentencing credit."

*Id*. at 1105 (citing **Commonwealth v. Byrne**, 833 A.2d 729, 734 (Pa. Super. 2003)). Such a waiver of statutory rights requires that the waiver be knowing, voluntary and intelligent. **See Byrne**, 833 A.2d at 736.

In addition, we are mindful 42 Pa.C.S.A. § 9762(b)(1-3) directs that, depending on the maximum length of the sentence, a defendant "shall" be confined to state prison or county jail. Relevant to this matter, a maximum term of incarceration of less than two years is to be served in county jail. **See** 42 Pa.C.S.A. § 9762(b)(3). Moreover, if the sentence is served in county jail, the trial court has the authority to determine if, and when, the defendant may be granted parole. **See** 42 Pa.C.S.A. § 9775.

The PCRA court offered the following concerning the waiver of credit for time served:

> [Edwards's] waiver of his statutory right to credit for time served was knowingly entered into and voluntary. Structuring his sentence without credit for the three years he already served accommodated [Edwards's] concerns about being transferred out of Philadelphia County and enabled his release at the minimum possible time based on the sentencing guidelines. At no point did [Edwards] indicate that he did not understand the structure of his sentence or object in any manner.

PCRA Court Opinion, 1/24/22, at 9. We agree.

Our review of the record indicates the parties and the trial court agreed at the sentencing hearing that, for the conviction of aggravated assault under 18 Pa.C.S.A. § 2702(a), the Sentencing Guidelines set out an offense gravity score of eleven, and Edwards had a prior record score of zero. Accordingly, the Sentencing Guidelines set forth a standard range minimum sentence of 36

to 54 months, plus or minus 12 months for the mitigated and aggravated ranges. ***See*** N.T., 7/28/20, at 6. In addition, the "deadly weapon used" enhancement calls for a minimum sentence of 54 to 72 months, plus or minus 12 months. ***See id***.

At the sentencing hearing, defense counsel requested that the court impose a sentence of 42 to 84 months, which is a fully mitigated deadly weapon used enhancement sentence. ***See id***. at 15-16. Defense counsel made the identical request in the sentencing memorandum presented to the court. ***See*** Defendant's Sentencing Memorandum, 4/21/20, at 6. In response, the Commonwealth recommended a sentence of 72 to 144 months. ***See*** N.T., 7/28/20, at 29. Therefore, both suggested sentences would necessitate a maximum sentence of more than two years, which would require Edwards to serve his sentence in state prison. Further, both defense counsel and Edwards reiterated that currently Edwards had been incarcerated for the incident for more than three years. ***See id***. at 17, 33.

Importantly, defense counsel conveyed to the court issues regarding Edwards's health and desire to receive a lenient sentence. Defense counsel noted the ramification of Edwards receiving a sentence that would require him to serve his term of incarceration in state prison: "[I]f the Court were to give Mr. Edwards a three and a half to seven year sentence of incarceration, he would go upstate, serve at least a year, they give him anger management programs. Mr. Edwards would not be released for at least one to two years

from the date of sentencing, although he's six months away from his minimum." N.T., 7/28/20, at 16. Essentially, counsel explained that incarceration in state prison would adversely delay Edwards's release.

Counsel then made the following request for a tailored sentence:

[I]f we go above the year he's going upstate regardless of what we do.

I did have the opportunity to speak to Mr. Edwards. He will request of this Court, as I'm going to just now, that if we can work out, again, *knowing that Mr. Edwards has served three years and a few days in custody*, if the Court were to sentence him to a sentence that would allow Mr. Edwards to serve additional incarceration on house arrest for a period of at least one to two years on house arrest, 23 months flat perhaps, I believe that that would -- which, again, Judge, it's a sentence of house arrest.

*Id*. at 17 (emphasis added). Defense counsel again noted "Mr. Edwards has served very much [of] the minimum sentence if the Court were to mitigate to that degree." *Id*. at 18.

Thereafter, the trial court made the following sentencing proposal:

Or in the alternative, if your concern was that he was going to be sent upstate and not released at his minimum, he could also get a County sentence *with no credit for time served*, and be paroled at a date certain.

*Id*. at 19 (emphasis added). Defense counsel immediately indicated to the court that its recommendation was a "great suggestion." *See id*.

Ultimately, the trial court imposed the following sentence of incarceration on the conviction of aggravated assault:

[T]he sentence is going to be 11 ½ to 23 months, no credit for time served, which means that he's going to be starting from today. But I will parole him at the minimum at 11 ½ months,

- 13 -

which essentially has him spending four years in custody. He's then going to be on his parole.

The first six months of his parole he will be on house arrest and then he will serve the rest of his parole in the community without house arrest.

*Id*. at 44.

The trial court then offered extensive instructions to Edwards regarding the requirement that he make no contact with Hines. *Id*. at 45. The court explained that a violation of the order would lead to a hearing and a return to custody, which could result in a period of state custody. *See id*. Edwards stated to the court that he understood the directive. *See id*. The trial judge also offered a detailed explanation of house arrest and conditions of probation and parole, and Edwards repeatedly acknowledged his understanding of the matters. *See id*. at 45-47.

Accordingly, our review confirms that Edwards knowingly, voluntarily, and intelligently waived his statutory right to credit for time served, which permitted the trial court to impose a sentence that allowed him to remain in custody in the county facility with a guaranteed date of parole. The sentence accommodated Edwards's request, as presented by defense counsel, and provided a mitigated length and satisfactory place of confinement. Moreover, Edwards expressed his understanding of the sentence without offering any objection or questions. Therefore, we conclude that Edwards appropriately

waived his statutory right to credit for time served, and his challenge to the legality of his sentence lacks merit.[4]

       Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/12/2022

---

[4] We note that the PCRA court aptly stated, "[Edwards] clearly understood his sentence and benefitted from the structure of the sentence." PCRA Court Opinion, 1/24/22, at 10. As the Commonwealth observed, "[T]he relief [Edwards] requests – i.e., vacating his sentence – would disrupt the overall sentencing scheme, would therefore require a remand for resentencing to a state prison, and would negate the benefit from his bargained-for sentence." Commonwealth's Brief at 12 (quotation marks, brackets and citation omitted).