J-A03033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                                  :           PENNSYLVANIA
                                                  :

             v.                    :

DANIEL BRIAN LETO           :

           Appellant       :   No. 1239 EDA 2024

Appeal from the Judgment of Sentence Entered April 8, 2024
In the Court of Common Pleas of Carbon County Criminal Division at
No(s):  CP-13-CR-0000273-2022

BEFORE:   STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                          **FILED MARCH 14, 2025**

Daniel Brian Leto ("Leto") appeals from the judgment of sentence imposed following his guilty pleas to aggravated assault and prohibited offensive weapons.[1]  We affirm.

On November 24, 2021, the victim was at Leto's garage, where Leto accused him of theft of firearms.  Leto and two men: (1) bound the victim to a lathe machine with a chain and handcuffs; (2) pointed a shotgun at the victim; (3) punched, kicked, and assaulted the victim with several objects; (4) threw hot ashes on him; and (5) held him for approximately one day.  Eventually, the victim was able to free himself and escape.  *See* Affidavit of Probable Cause, 12/1/21, at 1-2.

---

[1] 18 Pa.C.S.A. §§ 2702(a)(4), 908(a).  With respect to the offensive weapons charge, the criminal complaint alleged Leto possessed "a homemade suppressor."  Police Criminal Complaint, 12/1/21, at 5.

On April 8, 2024, Leto appeared before the trial court to plead guilty. The parties entered into a plea agreement, under which: (1) Leto would plead guilty to one count each of aggravated assault and prohibited offensive weapons; (2) the Commonwealth would withdraw the additional charges, which included robbery, false imprisonment, and possession of a controlled substance; (3) Leto would serve a sentence of nine to twenty-three months' imprisonment; and (4) the Commonwealth would not oppose eligibility for work release. Nevertheless, the Commonwealth advised Leto that it and the trial court could not guarantee work release, as the "work release director [must also be] okay with the situation." N.T. 4/8/25, at 5. Leto stated that he understood, and entered a negotiated guilty plea consistent with the above agreement.

The trial court imposed the agreed-upon sentence, an aggregate term of nine to twenty-three months' imprisonment. We note the standard sentencing guideline range, for Leto's aggravated assault conviction, was nine to sixteen months. Pertinently, the written sentencing order provided that Leto was "eligible for immediate work release." Order of Court, Count 2 Aggravated Assault, 4/8/24.

Leto did not file a post-sentence motion, but filed a timely notice of appeal. He then filed a court-ordered Pa.R.A.P. 1925(b) statement, which averred for the first time: (1) he pleaded guilty "upon the express condition that he would be eligible for work release, which the [trial] court granted in

its sentencing order," but he "has wrongfully been denied work release;"[2] and (2) his sentence was excessive. Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 5/28/24, at 1-2.

The trial court filed an opinion on June 28, 2024. It first reasoned that although its sentencing order provided that Leto was "eligible for immediate work release,"

> the ultimate decision of whether [he] would actually be eligible to participate in the work release program at the Carbon County Correctional Facility was up to the Work Release Director, . . . in accordance with the Carbon County Correctional Facility's Work Release Policy. Unfortunately for [Leto], a defendant who pleads guilty to a charge of aggravated assault is not eligible for any work release under the [prison's] Work Release program. Thus, [Leto] was not wrongfully denied work release by the court as he claims. . . .

Trial Court Opinion, 6/28/24, at 3-4 (unnecessary capitalization omitted). With respect to Leto's claim of an excessive sentence, the trial court pointed out that it accepted and imposed the sentence negotiated by the parties under the plea agreement, and thus Leto is not permitted to challenge the discretionary aspects of his sentence.

Leto presents two issues for our review:

_____

[2] We note that in his reproduced record, Leto includes a copy of an undated "Application for Permission to Permit Work Release," filed with the trial court, as well as a copy of the trial court's order, stamped as "filed" on August 27, 2024, denying the application. This August 27, 2024 order post-dates the notice of appeal by almost four months. Neither Leto's application nor the order appears in the certified record or trial court docket transmitted to this Court on appeal.

1. Did the [trial] court err and abuse its discretion by denying [Leto] work release after [Leto] pled guilty upon the express condition that he would be eligible for work release, which the court granted in its sentencing order?

2. Did the [trial] court err and abuse its discretion by failing to consider or give appropriate weight to the circumstances of the offense, [Leto's] background, mitigating circumstances, and/or refusing to reduce the aggregate sentence imposed of nine . . . months to a maximum period of [twenty-three] months in the Carbon County Correctional Facility?

Leto's Brief at 4 (unnecessary capitalization omitted).

Leto argues that the trial court abused its discretion by denying his work release after he pleaded guilty upon the express condition that he would be eligible for work release. Leto contends that because the trial court granted work release in its sentencing order, the court's subsequent denial of it implicates due process. Leto further claims that if this Court affirms his sentence and "accepts" the trial court's reasoning, it could "result in offenders of different magnitude [*sic*] receiving similar sentences or offenders of similar magnitude [*sic*] receiving different sentences." ***Id***. at 15. Leto deduces that "[i]n such cases, due process is implicated because these inconsistencies in sentencing are arbitrary[,]" and "[t]he uniformity of sentencing will be undermined." ***Id***. (unnecessary capitalization omitted).

Under the Pennsylvania Sentencing Code, a trial court may "grant the defendant the privilege of leaving the [prison] during necessary and reasonable hours" in order "[t]o work at his employment." 42 Pa.C.S.A. § 9755(c)(1). "The correctional authorities shall be responsible for arranging

a plan consistent with the [sentencing] order . . . and they **shall** determine when and under what conditions consistent with the order . . . the defendant shall be permitted to be absent from the correctional institution." 42 Pa.C.S.A. § 9755(e) (emphasis added). Meanwhile, the Pennsylvania Administrative Code requires each county to implement the criteria for eligibility for prison work release. **See** 37 Pa.Code § 451.124(b)(1). The facility manager of each county prison has the final decision over approval or disapproval of any prerelease program. **See** 37 Pa.Code § 94.6(c).

The trial court maintained that at the plea hearing, it "noted that it would make [Leto] 'eligible for immediate work release,'" but advised that "the ultimate decision of whether [he] would actually be eligible to participate in the work release program at the [prison] was up to the Work Release Director, . . . in accordance with the [prison's] Work Release Policy." Trial Court Opinion, 6/28/24, at 3. The court further explained that it did not deny Leto work release, but instead it was Leto's aggravated assault conviction that disqualified him from participation under the prison's work release policy. **See** **id**. at 4.

Our review of relevant case authority has not revealed a decision with a similar procedural posture — in which a trial court agreed to a defendant's **eligibility** for work release, but the prison authorities subsequently denied work release, and the defendant challenged the denial in a direct appeal to

this Court.[3]  Nevertheless, we observe that Leto does not address nor dispute the trial court's rationale that the decision to grant work release belongs exclusively to each prison.  Leto also does not acknowledge that before he entered his plea, the Commonwealth and trial court explained they could not guarantee work release because the work release director of the prison makes the final decision — and Leto stated that he understood.  **See** N.T. 4/8/24, at 4-5.  Instead, on appeal, Leto insists it is the trial court who denied work release.  In the absence of any argument addressing the trial court's rationale, or the statutory authority requiring each county prison's authorities to implement the work release program, we determine no relief is due on Leto's first issue.  **See** 37 Pa.Code §§ 94.6(c), 451.124(b)(1); **see also** 42 Pa.C.S.A. § 9755(c)(1).

---

[3] We note that in **Commonwealth v. Garnett**, 599 A.2d 654 (Pa. Super. 1991), the trial court imposed a sentence that included "work release imprisonment [*sic*]."  **Id**. at 655.  Subsequently, the defendant ("Garnett") discovered he was not eligible for work release, and appealed to this Court. **See id**.  This Court determined that the trial court's intended sentence could not be fulfilled, and thus remanded for resentencing.  **See id**. at 655-56.

The procedural posture in this case is distinguishable from that in **Garnett**.  While Garnett's sentence was specifically for "work release imprisonment," here, the trial court merely stated that Leto was eligible for work release and had no opposition to it, and that the Carbon County Correctional Facility ultimately had the authority to decide whether Leto was eligible for work release.  **See** 37 Pa.Code § 94.6(c); **see also Garnett**, 599 A.2d at 655.  Therefore, there is no issue with the fulfillment of Leto's sentence and remand is not appropriate here

In his second issue, Leto argues that the trial court abused its discretion in sentencing by not considering his "background [or] mitigating circumstances, and/or refusing to reduce the aggregate sentence" of nine to twenty-three months. Leto's Brief at 4 (unnecessary capitalization omitted). Leto contends that the sentence was contrary to the intent of the Pennsylvania Sentencing Guidelines, as his prior record score was a zero and his crime was one "single event." *Id*. at 12. He states that the trial court's "imposition of a sentence to a first time offender that is well over the standard range does nothing to provide more effective treatment to offenders [or] to break the cycle of crime and imprisonment." *Id*. at 13. Leto claims that the trial court further ignored the stated goals and purposes of the Pennsylvania Sentencing Code and Guidelines in not considering that he has the capacity to change and did not "possess the criminal mentality to support [his] total sentence." *Id*.

A claim that a trial court's sentence is excessive is a challenge to the discretionary aspects of the sentence. *See Commonwealth v. Sasala*, 260 A.3d 150, 150 (Pa. Super. 2021). A challenge to the discretionary aspects of a sentence does not entitle the appellant to review as of right. *See Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Before we reach the merits of a challenge to the discretionary aspects of a sentence, this Court must conduct a four-part analysis determining:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief

- 7 -

has a fatal defect, [***see***] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [***see***] 42 Pa.C.S.A. § 9781(b).

***Id***. (some citations omitted).

In the instant case, Leto has waived this challenge. Leto did not raise the issue at sentencing or in a post-sentence motion. Leto even acknowledges that he did not file a post-sentence motion pursuant to Pa.R.A.P. 720. ***See*** Leto's Brief at 7.

Moreover, even if Leto has not waived this issue, we would determine no relief is due. This Court has held that where a guilty plea agreement contains a negotiated sentence, and trial court accepts and imposes it, the defendant may not challenge the discretionary aspects of the sentence. ***See Commonwealth v. Byrne***, 833 A.2d 729, 735 (Pa. Super. 2003). Here, Leto and the Commonwealth negotiated the sentence in his guilty plea agreement and the trial court imposed the same sentence. Therefore, Leto cannot challenge the discretionary aspects of his sentence. ***See id***.

Additionally, contrary to Leto's claim, the trial court imposed a sentence in the standard range, where the standard range was nine to sixteen months, and the court imposed nine to twenty-three months' imprisonment. ***See*** N.T. 4/8/24, p.5; ***see also Commonwealth v. Yeomans***, 24 A.3d 1044, 1049 (Pa. Super. 2011) (stating the sentencing guidelines standard range refers to the ***minimum*** sentence and not the maximum sentence). Accordingly, we would conclude that no relief would be due.

For the foregoing reasons, we conclude that no relief is due on Leto's claims. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/14/2025